JENNIE M. SWAYZE, *Adm'x, &c.*, v. SPENCER P. WADE.

1. PROPERTY EXEMPT TO WIDOW; *Appealable Order.* Where the administratrix alleges in an annual settlement that a large amount of personal property was wrongfully inventoried, and asks that the same be declared exempt by law from the payment of the debts of the deceased, and the probate court grants such request, and the widow by such order is allowed to keep absolutely for the use of herself and children such personal property, and a creditor in open court gives notice of appeal from the order, and thereafter perfects his appeal, *held*, that such order, being in the nature of a final decision, and an allowance to the widow, is appealable to the district court.

2. ——— Sec. 1, ch. 103, Laws of 1879, has a prospective operation only.

3. PERSONAL PROPERTY *to be Kept by Widow.* Where the intestate died March 27, 1877, and letters of administration were issued April 9, 1877, and the inventory of the property of the intestate returned to the probate court on May 30, 1877, *held*, that, in addition to her portion of her deceased husband's estate, the widow is allowed to keep absolutely for the use of herself and children of the deceased only the articles of personal property mentioned in §49, ch. 37, Gen. Stat. of 1868. The provisions of §1, ch. 103, Laws of 1879, do not control.

*Error from Shawnee District Court.*

J. CLARKE SWAYZE died March 27, 1877, and on April 9, 1877, *Jennie M. Swayze*, his widow, was duly appointed administratrix of the estate of her deceased husband by the probate court of Shawnee county. May 30, 1877, she re-

turned to the' probate court an inventory and appraisement of the personal estate of the deceased, which was as follows:

### INVENTORY AND APPRAISEMENT

*Of the personal estate of J. Clarke Swayze, deceased, made on the — day of April, 1877, by J. K. Hudson, Frank A. Root and E. F. Campbell, appraisers of said estate.*

In compliance with the statute, the undersigned appraisers set off to the widow and children of said deceased the following articles without appraisement, the same being exempt from administration: Library and book-case, 4 carpets, 3 stoves, 4 bedsteads, 2 sets of chairs and lounge, 3 tables, 2 washstands, 2 student's lamps, 3 mirrors, 1 child's crib, 1 baby carriage, 1 gold watch and chain, 2 clocks, 9 window blinds, 2 sets of silver forks (plated), 2 sets of knives, 1 set of table-spoons, 1 set of teaspoons, other tableware (including queensware and glassware), 5 mattresses, 1 double lounge, bed clothes, stovepipe and drum, garden implements, 2 washtubs, 1 leather trunk.

And the residue of the personal estate of said deceased we do appraise as follows: 2 small editorial tables, $2; 1 long table, $1; 1 set of pigeon-holes, 50c.; 3 inkstands, 50c.; 2 waste baskets, 50c.; 1 Webster's dictionary, $2.50; 1 gas lamp, $2; 1 letter press and book, $3; 1 stove (base burner), $6; 8 chairs, $2; 2 stools, $1; 1 table with four drawers, $5; 3 folding-tables, $2.50; 1 book-keeper's desk, $15; 2 common stoves, $3; 1 letter scale, $2.50; 1 Campbell press, $800; 1 Universal half-medium press, $450; 1 Universal eighth news press, $250; 5 imposing-stones with frames, $100; 1 news cabinet, 20 cases, $9; 21 fonts display advertising type, $42; 1 job cabinet, $50; 43 fonts job type, $129; 1 proof press, $25; 1 galley rack, $1.50; 21 single brass-lined galleys, $31.50; 4 double brass-lined galleys, $8; 12 news stands, $40; 12 pairs news cases, $18; 2 italic cases, $2.50; 48 job and news cases, $36; 48 fonts of metal type, $192; 8 fonts of wood type, $40; 7 fonts large metallic type, $50; miscellaneous metal type, $50; 6 fonts labor-saving rules, $25; 3 labor-saving cases, $2.50; labor-saving leads, metal furniture and slugs, $25; 1 mitering machine, vise and box, $9; 3 files, 1 saw and screw driver, $1; 1 font combination border, $2.50; 3 job sticks, $3; 7 six-inch sticks, $3.50; 1 lead cutter, $1; 12 chases, $100; 40 column rules (daily and weekly), head rules, advertising rules, double and parallel rules, leads, slugs, dashes, $125; wood furniture, quoins, mallet, planer, shooting-sticks, $5; 800 lbs. brevier, $240; 600 lbs. nonpareil,

$240; 1 slice galley, $1.50; 1 composition kettle, $2.50; 3 copy hooks, 25c.; 1 mailing machine, $10; 2 kerosene cans, 50c.; lot of job ink, $10; 150 lbs. news ink, lot of job ink, $10; 7 bdls. news, 24x36, $42; 12 bdls. news, 26x38, $94; shelving and stick cabinet, $5; 2 advertising journals, 2 journals, 2 ledgers, 1 cash book, 1 carriers' book, 3 subscription books, 1 bill rack, 50c.; 1 coal bin, $2; job lot of colored paper, letter-head, bill-head, $10; 1 life insurance policy, $1,000.

Given under our hands, this 30th day of May, 1877.

J. M. SWAYZE, *Administratrix*.  ·   J. K. HUDSON,
                                        E. F. CAMPBELL,
                                    ·  FRANK A. ROOT,
Real estate, none.                              *Appraisers.*

J. M. SWAYZE, *Administratrix.*

STATE OF KANSAS, COUNTY OF SHAWNEE, SS.:

I, J. M. Swayze, administratrix of the estate of J. Clarke Swayze, deceased, do solemnly swear that the foregoing is a true and correct inventory of all the estates, both personal and real, belonging to the estate of J. Clark Swayze, deceased, which has come to my possession or knowledge, and particularly of all moneys, bank bills, or other circulating medium, and of all just claims of the deceased against me or other persons, according to the best of my knowledge.

J. M. SWAYZE, *Administratrix.*

Subscribed and sworn to before me, this 30th day of May, 1877.          (Seal.)      G. W. CAREY, *Probate Judge.*

· April 24, 1878, the administatrix filed in the probate court her first annual report, charging herself as follows:

Accounts ................................................................................. $988 03
Life insurance policy ....... ................................................. 1,000 00
*Blade* office material ............................................................. 2,340 57
                                                                          _____
                                                              · $4,328 60

And claiming credits as follows:

Amount of claims uncollected, disputed and worthless, as per
    schedule "A" hereto affixed .................................................. $711 74
Amount paid out as per schedule "B" ..................................... 1,975 12
She further says that certain property inventoried as *Blade* office
    material was wrongfully inventoried; that the heirs of said es-
    tate claim said property as exempt to them by the laws of the
    state of Kansas, free from the debts of said deceased. She
    therefore asks credit for the amount of inventory of same ........ 2,340 57
                                                                          _____
                                                                     $5,027 43
                                                                     4,328 60
                                                                     _____
    Balance due administratrix.. ....................................... $698 83

On July 5, 1878, the following proceedings among others were had in the probate court:

"*In the Matter of the Estate of J. Clarke Swayze, deceased, on First Annual Report.*—And now said report coming on for hearing, comes Jennie M. Swayze, administratrix of the said estate, and moves the court that the said report be approved, and represents to the court that certain property mentioned as '*Blade* office material,' was wrongfully so inventoried, and that the heirs of said estate claim said property as exempt to them by the laws of the state of Kansas, as free from the debts of said decedent. And thereupon said administratrix moves the court that she be allowed credit for the amount of the property so claimed to be exempt, to wit, $2,340.57. It is found by the court after due examination, and being fully advised, that said report is just and correct, except as to the credit claimed of balance of $400, yet uncollected on the life insurance policy of said deceased. It is further found that the *Blade* office material aforesaid was wrongfully inventoried, and is justly exempt by the law to the heirs of said estate, free from the debts of said decedent. It is thereupon ordered by the court, that the credit claimed in said report for the balance of $400 due on said life insurance policy be disallowed. It is further ordered that said administratrix be, and she is hereby allowed credit for the amount of the property so found to be exempt as aforesaid to the heirs of said estate in the said sum of $2,340.57. It is also further ordered by the court, that said report be and it is hereby approved as corrected in relation to the credit claimed of balance due on said life insurance policy. And thereupon notice of appeal was given in open court by Spencer P. Wade, *et al.,* Cleveland paper company and C. R. Williamson & Co., creditors of said estate in relation to the exemption of said Blade office material."

July 10, 1878, *Spencer P. Wade,* creditor as aforesaid, duly filed his affidavit and bond for an appeal to the district court. The probate court approved the bond, and sent a transcript to the district court, where it was filed July 16, 1878. January 31, 1880, the administratrix filed a motion to dismiss the action for reasons, among others, first, that the transcript and papers filed in this case do not show that this action was ever pending in the probate court of Shawnee county; second, that the transcript and papers filed in this case do not show

that any final order has ever been made by the probate court from which an appeal lies to this court. This motion was denied by the court on January 31st, 1880, to which the administratrix duly excepted. The case was called for trial on March 6th, 1880. A jury being waived, the matter was submitted to the court upon the following admissions and testimony:

It was admitted on the part of plaintiff in error, Wade, "1st, That J. Clarke Swayze, deceased, in his lifetime was a resident of Shawnee county, Kansas, and the head of a family; that said Swayze departed this life on the 27th day of March, 1877.

"2d, That he was by trade a practical printer.

"3d, That during his lifetime he kept the articles enumerated in the inventory filed in the probate court on the 30th day of May, 1877, as *Blade* office material, (and which articles were afterward sold by his administratrix for the sum of $—,) for the purpose of carrying on the trade or business of news and job printer, at No. 184 Kansas avenue, Topeka, Kansas, at which place he (Swayze) also published the *Blade* newspaper, of which newspaper said Swayze was editor and proprietor.

"4th, That some of the articles specified in said inventory as *Blade* office material, to wit, 150 lbs. news ink, lot of job ink, $10, 7 bdls. news, 24x36, $42, 12 bdls. news, 26x38, $94, job lot of colored paper, letter-heads, bill-heads, $10, were stock in trade purchased for the purpose of altering its form and selling again; that said articles enumerated were worth less than $400.

"5th. That the other of said items named in said inventory as *Blade* office material were the tools and implements of said Swayze, used and kept by him for the purpose of carrying on the trade or business of news and job printer and publisher of the *Blade* newspaper, and that said articles were necessary for carrying on said trade or business; that in the trade or business of news and job printer and publisher, tools and implements are necessary.

"6th. That at the time of his death he was still engaged in carrying on the said trade or business of news and job printer, and editing and publishing said newspaper.

"7th. That at his death he left a widow and several minor children, who previous to his death he had supported wholly

by his said trade or business of news and job printer and publisher.

"8th. That on the 4th day of March, 1878, a claim of Spencer P. Wade was presented against said estate in said probate court, and that the same was allowed by said court in the sum of $668.25, and assigned to the fourth class of claims."

J. K. Hudson, of Topeka, was called and sworn as a witness, and testified as follows:

"I am a practical printer; have been a practical printer over twenty years. I am also engaged in publishing a newspaper in this city. [Inventory filed on the 30th of May, 1877, here shown to witness.] I am familiar with the items of this inventory, consisting of type, presses, etc., known as *Blade* office material. I am one of the appraisers who signed this inventory and appraisement. The articles named in this inventory, known as *Blade* office material, are necessary for the purpose of carrying on the trade or business of news and job printer. All the materials were not necessary for the work of each day or month, but were liable to be used every week. Swayze had a good deal of material that he did not use each day."

( *Cross-examination:* ) "I consider the two small editorial tables specified in the inventory both necessary to carry on the trade or business of job printer and publisher. I consider them tools or in part. I consider the gas lamps necessary to do work by at night. I was familiar with Swayze's business. He had his material in my office doing job work for more than a year. I consider the stove mentioned in the inventory necessary to his business. The letter scales mentioned therein were necessary also."

Thereupon the court found for *Spencer P. Wade* against *Jennie M. Swayze*, administratrix, and held that the material named and referred to as the *Blade* office material was not exempt by law to the widow and children of J. Clarke Swayze, deceased, and ordered and adjudged that the ruling of the probate court of Shawnee county allowing the administratrix credit for the sum of $2,340.57 be wholly set aside and vacated; that said *Blade* office material and the proceeds thereof be applied and distributed as assets of the estate of the deceased, not exempt by law to the widow and children; and

that the appellant recover from said estate his costs herein. The administratrix brings the case here.

*J. H. Moss,* and *A. L. Williams,* for plaintiff in error.

*A. H. Case, Vance & Crumrine,* and *Guthrie & Brown,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Two questions are presented for our consideration by the record in this case. The first is, was the order withdrawing the *Blade* office material, and the proceeds thereof, from the assets of the estate of the deceased, and allowing the administratrix credit therefor, an appealable order? Second, if appealable, is the property known as the *Blade* office material, mentioned in the inventory of the goods and chattels of the estate, exempt to the widow for the use of herself and children of the deceased? We need not discuss or decide whether an appeal lies from the annual settlement of an administrator, or administratrix, because the appeal was not taken from the order of the probate court confirming the annual settlement of the administratrix. The appeal was taken from the order making an allowance to the widow of the sum of $2,340.57, absolutely for the use of herself and children. By the terms of the order, this sum was withdrawn from the assets of the estate as property exempt by law from the payment of any of the debts of the deceased, and the administratrix was allowed credit for such sum. The notice of the appeal was given in open court, and was taken upon the order exempting and withdrawing the proceeds of the *Blade* office material from the assets of the estate, and not from the order approving the annual settlement.

Sec. 188, ch. 37, Comp. Laws of 1879, provides: "Appeals shall be allowed from the decision of the probate court, to the district court, in the following cases: . . . *Fourth,* On all orders directing the payment of legacies, making distribution, or making allowances to the widow. . . . *Twelfth,* . . . . In all other cases where there shall be a final de-

cision of any matter arising under the jurisdiction of the probate court, except in cases of *habeas corpus* and injunction." Therefore, as the order appealed from was in the nature of an allowance to the widow and a final decision of the probate court, the appeal was properly taken and the district court rightly denied the motion to dismiss the action. As no notice of the hearing of the application for exemption was given to the creditors, or other parties, of course an order *ex parte* would have bound no one interested adversely thereto, but as defendant in error appeared voluntarily at the hearing thereon, and gave notice in open court of his appeal, and thereafter perfected the appeal, the question of the jurisdiction of the probate court for want of notice is not before us.

Upon the second inquiry, conceding that the articles, goods and chattels known as the *"Blade* office material" were exempt to the deceased during his lifetime, it is clear to us that prior to the adoption of § 1, ch. 103, Laws 1879, the widow, in addition to her portion of her deceased husband's estate, was allowed to keep for the use of herself and children of the deceased only the articles of personal property mentioned in § 49, ch. 37, Gen. Stat. 1868. This section does not include the articles and property exempted under the order of the probate court. However harsh or unjust the provisions of that article were, we have no right to enlarge its terms or substitute new provisions therefor. We make no laws, and are bound by the enactments of the legislature, when within the limits of the constitution. Counsel however claim that if the exemption was not within the terms of the act of 1868, the property is exempt under § 1, ch. 103, Laws of 1879. This section reads:

"That § 49 of ch. 37 of the Gen. Stat. of 1868 be amended to read as follows: Sec. 49. In addition to her portion of her deceased husband's estate, the widow shall be allowed to keep absolutely for the use of herself and children of the deceased, all personal property of the deceased, which was exempt to him from sale and execution at the time of his death."

This act went into force March 11, 1879, nearly two years after the decease of the intestate and the appointment of the

administratrix, and after the first annual report of such administratrix had been filed, and after the appeal in this case had been perfected. That act, therefore, cannot be said to confer or grant any exemption to the widow or children of the deceased, because the statute has a prospective operation only, as its terms do not show clearly any legislative intention that it should operate retrospectively. Even if the legislature had intended that the act should operate retrospectively, it is doubtful whether such an exercise of power would be legitimate. Before the adoption of the statute, the property was in the hands of the administratrix, subject to the payment of the costs and expenses of administration and the payment of all debts. To all intents and purposes, the creditors had a lien on such property and its proceeds, and such lien could not be legally divested at the will of the legislature, any more than the lien of an attaching or execution creditor could be divested by the legislative will against the consent of the creditor.

The order and judgment of the district court will be affirmed.

All the Justices concurring.